URSULA S. YEAGER, Administrator of the Estate of JOSEPH J. YEAGER, Deceased, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**Railroads:** NEGLIGENT RATE OF SPEED. The question of whether a railway engine is being operated at a dangerous rate of speed is to be determined by the circumstances: Thus where a brake-

man was riding on the front of a switching engine that was pushing a coal car and approaching other cars on the same track, a finding that six to eight miles an hour was a negligent and dangerous rate of speed would not have been without support.

**Same:** SUBMISSION OF ISSUES: APPEAL. Where the petition charged that the engineer and fireman were negligent in running the engine, and in failing to stop in time to have avoided the accident and in failing to keep a lookout, making no separate charge of negligence against the fireman, and defendant did not ask that the allegations of negligence against them jointly be divided and separately submitted, the defendant could not contend on appeal that there was no evidence to support the alleged negligence of the fireman.

**Same:** CONTRIBUTORY NEGLIGENCE. Contributory negligence will not defeat recovery for a personal injury unless it causes or contributes to the injury.

**Same:** DAMAGES. The amount of recovery for injuries occasioning death is governed largely by the earning capacity and expectancy of the deceased; and in this case a judgment of $9,000 for the death of a brakeman is upheld.

*Appeal from Emmet District Court.*—HON. A. D. BAILIE, Judge.

WEDNESDAY, APRIL 10, 1912.

ACTION to recover damages to the estate of Yeager resulting from his death, which is alleged to have been caused by the negligence of defendant, in whose employment he was engaged as brakeman when he was injured. There was a verdict for the plaintiff, and defendant appeals.—*Affirmed.*

*Carroll Wright, J. L. Parrish,* and *C. W. Crim,* for appellant.

*M. J. Groves,* and *J. G. Myerly,* for appellee.

McCLAIN, C. J.—This case was before this court on a

former appeal (148 Iowa, 231), and a judgment for plaintiff was reversed on the ground that allegations of negligence were submitted to the jury which were not supported by any evidence. It was held, however, on the former appeal, that some of the allegations of negligence were supported by sufficient evidence to take them to the jury.

On the trial from which this appeal is taken, the facts disclosed by the evidence did not differ from those disclosed on the former appeal in any respect material to our present consideration of the case, and it is unnecessary to restate them. One correction, however, in the former statement, seems necessary to make the situation of the parties at the time of the accident perfectly clear. As the switch engine pushing a coal car in front of it and moving to the eastward passed from the main track to side track No. 1 approaching the freight cars which had previously been left on that side track and with which the coal car collided, causing the death of Yeager, the deceased, who was on that night the "field" brakeman charged with the duty of looking after the cars which were to be handled, was on the north end of the footboard at the front of the engine, that is, on the left-hand side as the engine ran eastward, and next to the coal car; while Brisbin, the other brakeman, whose duty it was on that night to remain with the engine, was on the south end of the running board, that is, on the right-hand side, in a position to give signals to the engineer. From the position which Yeager occupied, it was impossible to signal the engineer, whose proper position was on the right-hand side of his engine cab, that is, at the south side as the engine ran east.

I. In submitting the issues to the jury, the court included the issue as to whether the engineer was negligent in causing his engine to move along the switch track at a high and dangerous rate of speed, and it is the contention

for appellant that the only evidence on the subject tended

**I. RAILROADS: negligent rate of speed.** to show that the engine was being operated at a speed of some six to eight miles an hour and could have stopped within six feet, and that as matter of law this was not a dangerous rate of speed. But it is plain that the question whether the engine was being negligently operated with reference to its rate of speed must be considered in the light of the circumstances; and in view of the fact that, as the jury might have found, the engineer was causing his engine and the coal car pushed in front of it to approach other cars upon the same track, a conclusion that the rate of speed, in view of the circumstances, was dangerous and negligent, would not be without support in the evidence. If, as some of the witnesses testified, the engineer knew, or under the circumstances ought to have known, that he was approaching cars standing on the track, for the purpose of pushing such cars ahead of the coal car which was attached in front of the engine, then it was clearly negligence on his part to operate the engine at such a rate of speed as to cause the coal car to come in contact with the standing cars with such violence as to crush the deceased where he stood between the coal car and the engine on the footboard.

II. The contention on the part of appellant that the court submitted to the jury an issue as to the negligence of the fireman, Wilkins, in continuing to run the coal car

**2. SAME: submission of issues: appeal.** and the engine along the switch track until the coal car collided with the other cars on the track, and that there is no evidence of the negligence of Wilkins, does not take into account the exact state of the record. The allegations in the petition involving the fireman were that the engineer and fireman were negligent in continuing to run the engine and car attached thereto after they had passed over the switch to track No. 1, and in failing to stop said engine and car in

time to prevent a collision, and that they were negligent in failing to keep a lookout, etc.; and the court submitted to the jury the question whether the engineer and fireman were negligent in continuing to run the coal car and engine along track No. 1 and in failing to stop before the collision and in failing to keep a lookout. It is clear that the negligence of the fireman was only involved so far as he was concerned with the engineer in the running of the engine. No independent negligence of the fireman was referred to or submitted. As the defendant did not ask that the allegations as to negligence of the engineer and fireman be divided or separately submitted, it is in no situation to now contend that as to the fireman alone there was no evidence of negligence. The court did not submit to the jury, as counsel for appellant assume, an issue as to whether the fireman was negligent in continuing to run the coal car and engine on side tracck No. 1 and in failing to stop them before the collision and in failing to keep a lookout. Under the issue as presented by the pleading and the instructions, the jury could not have understood that any separate and independent negligence of the fireman was involved, and they could not have been misled by the instructions into so assuming.

III. The principal contention for appellant is that in an instruction relating to the contributory negligence of the deceased the jurors were told that such negligence would not relieve the defendant from liability unless what deceased did or omitted to do, although it constituted negligence, was a proximate or a part of the proximate cause or causes of his death. The instruction although somewhat unnecessarily elaborate, correctly stated the law, for the negligence of the deceased must have proximately caused or contributed to his injury in order to constitute contributory negligence. No matter how negligent he may have been in what he did, such negligence would be immaterial unless with reference

3. SAME:
contributory
negligence.

to the injury it was proximate rather than remote. Counsel say that under the issues and evidence the negligence of deceased, if any, must have had proximate connection with his injury, and that, having found that deceased was guilty of some negligent act without which the injury would not have happened, then his negligence must have been proximate. This, no doubt, is a correct statement; but the instruction given had no other effect than to assist the jury in determining whether the negligent act of deceased was one without which the injury would not have happened. The suggestion of counsel that, if the jury found some other proximate cause without which the accident would not have happened, then they might be led to believe by the instruction that the contributory negligence of deceased could be ignored, is not in accordance with the plain meaning of the instruction as given.

IV. The verdict and judgment were for $9,000, and counsel contend that the amount of the recovery is excessive and the verdict must have been the result of

4. SAME: damages.

passion and prejudice. It is true that in some cases we have reduced a verdict for injuries resulting in death to an amount not exceeding $6,000 to $8,000. See *Grace v. Minneapolis & St. L. R. Co.*, 153 Iowa, 418; *Engvall v. Des Moines City R. Co.*, 145 Iowa, 560. But the court has never fixed any arbitrary limit to the amount of recovery in case of injuries resulting in death. Manifestly it can not do so, for the earning capacity of the deceased and his reasonable expectancy of life must be taken into account. The expectancy of life of the deceased in this case was greater than in the *Engvall* case, *supra*, and his earning capacity was greater than the earning capacity shown in the *Grace* case. We are not inclined to interfere with the amount of recovery allowed by the trial court and can not hold that the verdict was excessive in such sense as to indicate passion and prejudice.

The judgment is therefore *affirmed*.